■ EMERY ROTH & SONS, Appellant, v NATIONAL KINNEY CORPORATION et al., Respondents, and RICHARD ROTH, SR., et al., Appellants.—Order, Supreme Court, New York County, entered on September 15, 1976, insofar as appealed from, affirmed, without costs and without disbursements, for the reasons stated by Stecher, J., at Special Term. Cross appeal from the order of the Supreme Court, New York County, entered on September 15, 1976, permitted to be withdrawn, without costs and without disbursements. Concur—Birns, Capozzoli and Lane, JJ.; Murphy, P. J., dissents in part in the following memorandum with respect to [the first-above appeal]. Paragraph 18 (a) of the subject lease reads as follows: "18. In case of any such default, re-entry, expiration and/or dispossess by summary proceedings or otherwise, (a) the rent shall become due thereupon and be paid up to the time of such re-entry, dispossess and/or expiration, together with such expenses as Landlord may incur for legal expenses, attorneys' fees, brokerage, and/or putting the demised premises in good order, or for preparing the same for re-rental". In its third counterclaim, Uris requests damages of $25,000 for

attorneys' fees and other expenses incurred in reobtaining possession of the demised premises, putting them in good order and preparing them for possible rerental. Since the instant lease specifically allows an action to be brought at any time after fees and expenses have been incurred, Uris should have sought its fees and expenses for the summary nonpayment proceeding in that proceeding *(930 Fifth Corp. v King,* 54 AD2d 636). In that nonpayment proceeding, Uris sought the recovery of rent for January and February, 1976. By failing to make a formal claim for the fees and expenses incurred therein, Uris thereby waived its right to collect them in this action. Upon its face, the third counterclaim states a meritorious basis for relief. However, to the extent it seeks recovery for fees and expenses incurred in the summary proceeding, I would find it to be without merit. Under that third counterclaim, Uris is only entitled to recoup those fees and expenses incurred in collecting the March, 1976 rent and in rerenting the premises. Paragraph 18 (c) of the lease provides, *inter alia,* as follows: "18. (c) Tenant or the legal representatives of Tenant shall also pay Landlord as liquidated damages for the failure of Tenant to observe and perform said Tenant's covenants herein contained, any deficiency between the rent hereby reserved and/or covenanted to be paid and the net amount, if any, of the rents collected on account of the lease or leases of the demised premises for each month of the period which would otherwise have constituted the balance of the term of the lease * * * Any such liquidated damages shall be paid in monthly instalments by Tenant on the rent day specified in this lease and any suit brought to collect the amount of the deficiency for any month shall not prejudice in any way the rights of Landlord to collect the deficiency for any subsequent month by a similar proceeding". In its fifth counterclaim, Uris alleges that there has been an anticipatory breach of the lease by plaintiff Emery and defendants on the counterclaim. Therefore, Uris seeks damages of $1,525,000 for the period April 1, 1976 through February 28, 1981, the remainder of the lease. Because of the specific language in paragraph 18 (c), quoted above, Uris need not wait until the end of the lease to recoup its entire damages. It may now bring suit for accrued deficiencies in the monthly rent *(Hermitage Co. v Levine,* 248 NY 333, 337). Hence, the fifth counterclaim states a viable basis for relief only to the extent it seeks accrued damages. There is no dispute in the record that Julian Roth is not a signatory to the lease nor is he a partner in plaintiff Emery. Consequently, the second, third and fifth counterclaims do not state a cause of action against him and should be dismissed as against him.